IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHESTER EUGENE SMITH, JR.,

              Plaintiff,

vs.                                    Case No. 13-1385-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

              Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

**I.   General legal standards**

The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

2

they are not only unable to perform their previous work but
cannot, considering their age, education, and work experience,
engage in any other kind of substantial gainful work which
exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential
evaluation process to determine disability.  If at any step a
finding of disability or non-disability can be made, the
Commissioner will not review the claim further.  At step one,
the agency will find non-disability unless the claimant can show
that he or she is not working at a "substantial gainful
activity."  At step two, the agency will find non-disability
unless the claimant shows that he or she has a "severe
impairment," which is defined as any "impairment or combination
of impairments which significantly limits [the claimant's]
physical or mental ability to do basic work activities."  At
step three, the agency determines whether the impairment which
enabled the claimant to survive step two is on the list of
impairments presumed severe enough to render one disabled.  If
the claimant's impairment does not meet or equal a listed
impairment, the inquiry proceeds to step four, at which the
agency assesses whether the claimant can do his or her previous
work; unless the claimant shows that he or she cannot perform
their previous work, they are determined not to be disabled.  If
the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the
claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th
Cir. 1993).  At step five, the burden shifts to the
Commissioner to show that the claimant can perform other work
that exists in the national economy.  Nielson, 992 F.2d at 1120;
Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The
Commissioner meets this burden if the decision is supported by
substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);
416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On June 15, 2012, administrative law judge (ALJ) John B.
Langland issued his decision (R. at 15-36).  Plaintiff alleges
that he had been disabled since January 19, 2004 (R. at 15).
Plaintiff meets the insured status requirements for social
security disability benefits through March 31, 2009 (R. at 18).

At step one, the ALJ found that plaintiff did not engage in substantial gainful activity after the alleged onset date (R. at 18).  At step two, the ALJ found that plaintiff had numerous severe impairments (R. at 18).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 18).  After determining plaintiff's RFC prior to April 4, 2011 (R. at 19), the ALJ determined at step four that plaintiff was unable to perform past relevant work (R. at 33).  At step five, the ALJ found that plaintiff, prior to April 4, 2011, can perform other jobs that exist in significant numbers in the national economy (R. at 33).  Therefore, the ALJ concluded that plaintiff was not disabled prior to April 4, 2011 (R. at 35).  The ALJ provided a different RFC beginning on April 4, 2011 (R. at 32), and based on that RFC, found that beginning on April 4, 2011, plaintiff could not perform other work in the national economy, and was therefore disabled (R. at 34-35).

**III.  Did the ALJ err in discounting the opinions of Dr. Genilo prior to April 4, 2011?**

Dr. Genilo, a neurologist, began treating plaintiff on April 4, 2011 (R. at 775).  In a statement prepared by counsel following a telephone conversation between counsel and Dr. Genilo (R. at 778), Dr. Genilo, on October 31, 2011, opined that plaintiff was too slow and lacked adequate judgment to function even at an unskilled competitive level.  Plaintiff was found to

5

be markedly limited in his ability to understand, remember, or carry out even short simple instructions, maintain attention and concentration for extended periods, remember locations and work-like procedures, sustain an ordinary routine without special supervision, perform at a consistent pace without an unreasonable number and length of rest periods, ask simple question or request assistance, respond appropriately to changes in the work setting, travel in unfamiliar places or use public transportation, set realistic goals, or make plans independently of others (R. at 777).  Dr. Genilo opined that these limitations have existed since 2004 based on his review of the 2003 CT and the notes of Dr. Abbas from 2004 which noted objective evidence of the brain damage that caused the cognitive difficulties that he had observed (R. at 778).

On December 18, 2011, Dr. Moeller, a psychologist, prepared a psychological evaluation based on an exam performed on November 29, 2011 (R. at 781).  He concluded that, at the time of the evaluation, plaintiff did not appear to have the necessary psychological skills to maintain simple, gainful employment (R. at 788).  He found that plaintiff had moderate or marked impairments in dealing with complex instructions or decisions (R. at 793), that he was moderately limited in responding to usual work situations and changes in a work

setting, and markedly limited in interacting appropriately with supervisors or co-workers (R. at 794).

The ALJ gave substantial weight to the opinions of Dr. Moeller, which he found to be congruent with the opinion of Dr. Genilo regarding plaintiff's abilities at the present time.  The ALJ therefore gave substantial weight to the opinions of Dr. Genilo as of April 4, 2011, when he first started treating plaintiff.  The ALJ concluded that the record did not support the opinion of Dr. Genilo that plaintiff's limitations, as expressed in Dr. Genilo's report, go back to 2004.  The ALJ stated that it is reasonable to believe that plaintiff may have worsened over time such that he can no longer work as of April 4, 2011 (R. at 31).

The ALJ discounted the opinions of Dr. Genilo prior to April 4, 2011 because of a lack of support in the record.  The ALJ specifically noted the lack of support in the record for Dr. Genilo's opinions regarding plaintiff's functioning prior to April 4, 2011 (R. at 31).  The ALJ had previously discussed the treatment records from Prairie View from 2005-2009 (R. at 25).  Those records gave plaintiff a GAF of 50 in 2005-2006.  However, his GAF score improved to 52 in January 2007, 58 in February 2007, 70 on April 5, 2007, 69 in August 2007, 72 in January 2008, and 75 in May 2008 (R. at 431, 439, 441, 443, 445, 447, 449, 451, 452, 453).  The ALJ also discussed the treatment

records from Friends University Center on Family Living, where plaintiff sought treatment from October 2010 through April 2011 (R. at 624-693).  Plaintiff's initial GAF scores in October and November 2010 were 50 (R. at 681-682, 689-691).  However, those scores moved up to 55-58 from January 2011 through February 2011 (R. at 663-664, 651-652, 648-649), and further rose to 62 in March 2011 (R. at 635-636), and 65 in April 2011 (R. at 629-630).  GAF scores may be of considerable help to the ALJ in formulating the RFC, although they are not essential to the RFC's accuracy.  Harper v. Colvin, 528 Fed. Appx. 887, 891 (10th Cir. July 1, 2013); Petree v. Astrue, 260 Fed. Appx. 33, 42 (10th Cir. Dec. 28, 2007).[1]

The ALJ also considered the opinions of Dr. Adams, a consultative psychologist, who reviewed the files and prepared a mental RFC assessment on October 12, 2010 (R. at 606-622).  Dr.

---

[1] GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders.  The scores in this case represent the following:

71-80: **If symptoms are present, they are transient and expectable reactions to psychosocial stressors...; no more than slight impairment in social, occupational, or school functioning...**.

61-70: **Some mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning...but generally functioning pretty well, has some meaningful interpersonal relationships**.

51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers).

41-50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job) (emphasis in original).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

Adams opined that plaintiff had moderate limitations in
understanding, remembering and carrying out detailed
instructions, and in interacting with the public (R. at 606-
607).  Dr. Adams reviewed a mental status exam performed by Dr.
Nystrom in 2007.  Dr. Nystrom performed a MMSE (mini-mental
state exam), with a score of 29/30, and which showed no
remarkable psychiatric symptoms except for plaintiff's criminal
history.  Dr. Nystrom concluded that plaintiff's mental
impairment was non-severe.  Dr. Adams also reviewed plaintiff's
treatment records at Prairie View (2005-2009) and COMCARE (2009-
2010).  Dr. Adams found that plaintiff had severe impairments,
with moderate limitations in social functioning and in
concentration, persistence and pace (R. at 622).  The ALJ noted
the longitudinal perspective of the report from Dr. Adams, and
gave it substantial weight (R. at 31).

    Although Dr. Genilo opined that plaintiff had severe mental
limitations, and further opined that plaintiff has been
functioning at that level since 2004, the GAF scores from
plaintiff's treatment records at Prairie View in 2005-2008 show
that plaintiff improved from serious symptoms to moderate
symptoms, to mild symptoms, and then only transient symptoms and
slight impairments.  The GAF scores from Friends University
showed an improvement from October 2010 of 50 to a score of 65
in April 2011.  Dr. Adams prepared a detailed assessment of

plaintiff's mental health records, noting that Dr. Nystrom found that plaintiff's mental impairments were non-severe in 2007. Dr. Adams concluded that plaintiff had some severe mental impairments as of October 12, 2010, to which the ALJ accorded substantial weight.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

Although Dr. Genilo opined that plaintiff's functional mental limitations go back to 2004, the ALJ relied on treatment records and the assessment by Dr. Adams to conclude plaintiff's

mental limitations have worsened over time.  Based upon the opinions of Dr. Genilo and Dr. Moeller in 2011, the ALJ concluded that plaintiff's RFC worsened in 2011 such that she could no longer work, but found that the medical records and opinions prior to 2011 do not demonstrate that plaintiff had mental limitations that prevented her from working.  It is not for the court to reweigh the evidence.

The ALJ, in discounting the opinions of Dr. Genilo, expressed some concern about the fact that the report was prepared by plaintiff's counsel, although the ALJ noted that Dr. Genilo stated in the statement that it accurately represents his observations and opinions (R. at 29-30).  The ALJ indicated that these cognitive deficits were not noted in any medical records prior to 2011, and that Dr. Genilo had only seen plaintiff on three occasions in 2011 (R. at 30).  Although the court has some concern because the ALJ questioned the accuracy of an opinion written by plaintiff's counsel for the physician's signature, the court finds that the balance of the ALJ's analysis of the weight accorded to the opinions of Dr. Genilo and the other medical evidence pertaining to plaintiff's mental limitations prior to 2011 is supported by substantial evidence.  See Barnum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004)(while the court had some concerns about the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her

performance of certain household chores, the court concluded that the balance of the ALJ's credibility analysis was supported by substantial evidence in the record).

**IV. Did the ALJ err in discounting the opinions of Patricia Harris, an advanced registered nurse practitioner (ARNP)?**

The record contains an unsigned and undated mental RFC form, indicating that plaintiff is markedly limited in in 14 out of 20 categories (R. at 796-797). Plaintiff's counsel submitted this evidence, stating that it is from Patricia Harris, ARNP (R. at 320). Ms. Harris treated plaintiff while she received mental health care at COMCARE (R. at 512-516, 590-599). The ALJ stated that the mental RFC form is not signed or dated, but that it appears to be from ARNP Harris. The ALJ stated that such extreme limitations are not supported by the COMCARE treatment notes. The ALJ also noted that ARNP Harris is not an acceptable medical source (R. at 31).

Although plaintiff's GAF score on admission (December 2009) to COMCARE was 47 (R. at 490, 493), by January 2010 her GAF score was at 54 (R. at 502). The records from ARNP Harris from March 4, 2010 through February 25, 2011 show a GAF score of 52, indicating moderate symptoms or moderate difficulty in social or occupational functioning. Plaintiff's GAF did not drop to 50, indicating serious symptoms or serious impairment in social or occupational functioning, until May 27, 2011 (R. at 512-516,

12

590-599, 715-733).  The ALJ discussed these GAF scores and treatment notes in his decision (R. at 25-26).

The ALJ accurately noted that the mental RFC form was neither dated or signed.  The treatment records from January 2010 through February 2011 specify a GAF score indicating moderate symptoms or moderate difficulty in social or occupational functioning.  The ALJ reasonably concluded that the treatment notes did not support the mental RFC form indicating marked impairments in 14 out of 20 categories.  The ALJ accurately noted that ARNP Harris was not an acceptable medical source.  SSR 06-03p, 2006 WL at 1-2.  Although the ALJ did not mention her as an "other" medical source, the court finds no error in the ALJ's reasons for discounting her opinions, which are undated, and thus offer no clear opinion regarding her mental limitations before April 4, 2011.

**V.  Did the ALJ err by failing to properly determine the onset of plaintiff's disability in accordance with Social Security Ruling 83-20?**

Social Security Ruling (SSR) 83-20 sets forth the policy and describes the relevant evidence to be considered when establishing the onset date of disability.  1983 WL 31249 at *1.  Once published, Social Security Rulings are binding on all components of the Social Security Administration.  20 C.F.R. § 402.35(b)(1).  Factors relevant to the determination of

disability onset include the individual's allegations as to when the disability began, the work history, and the medical evidence.  SSR 83-20, 1983 WL 31249 at *1; <u>Reid v. Chater</u>, 71 F.3d 372, 373-374 (10th Cir. 1995).  These factors are often evaluated together to arrive at the onset date.  However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence.  SSR 83-20, 1983 WL 31249 at *1.  In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available.  1983 WL 31249 at *3.

With slowly progressing impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling.  Determining the proper onset date can be particularly difficult when adequate medical records are not available.  In such cases, it will be necessary to infer the onset date.  1983 WL 31249 at *2.  In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment occurred some time prior to the date of the first recorded medical examination.  1983 WL 31249 at *3.  Ruling 83-20 thus recognizes that it sometimes may be necessary to infer the onset date.  The ALJ then should call on the services of a medical advisor at the

hearing.  A medical advisor need be called only if the medical evidence of onset is ambiguous.  Reid, 71 F.3d at 374.  If the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a legitimate medical basis.  Blea v. Barnhart, 466 F.3d 903, 911 (10th Cir. 2006);  Grebenick v. Chater, 121 F.3d 1193, 1200-1201 (8th Cir. 1997).

The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in substantial gainful activity for a continuous period of at least 12 months or result in death.  Convincing rationale must be given for the date selected.  SSR 83-20, 1983 WL 31249 at *3.

Where medical evidence of onset is ambiguous, an ALJ is obligated to call upon the services of a medical advisor.  In the absence of clear evidence documenting the progression of the claimant's condition, the ALJ does not have the discretion to forgo consultation with a medical advisor.  Blea, 466 F.3d at 911-912.

Plaintiff alleged disability beginning January 19, 2004. Plaintiff was insured for disability insurance benefits through March 31, 2009.  The ALJ found that plaintiff's limitations did not worsen to the point that he found him disabled until April

4, 2011; thus, plaintiff was only eligible for supplemental security income payments.  Therefore, the onset date of plaintiff's disability is critical to the issue of which type of disability benefits plaintiff can receive.  A comparison of the RFC findings for the period prior to April 4, 2011 and for the period beginning on April 4, 2011 indicate that only plaintiff's mental limitations worsened effective April 4, 2011 (R. at 19-20, 32).

An ALJ is obligated to call upon the services of a medical advisor if the medical evidence of onset is ambiguous or in the absence of clear evidence documenting the progression of plaintiff's condition.  However, it is important to understand that the issue of whether a medical advisor is required under SSR 83-20 does not turn on whether the ALJ could reasonably have determined that the claimant was not disabled before her last insured date.  Rather, when there is no contemporaneous medical documentation, the court asks whether the evidence is ambiguous regarding the possibility that the onset of her disability occurred before the expiration of her insured status.  Blea, 466 F.3d at 911.

This case contained contemporaneous medical documentation of plaintiff's mental impairments and limitations.[2]  The ALJ considered mental health treatment records from Prairie View,

---

[2] The court will only address the mental limitations because it was only those limitations that were found to be have worsened as of April 4, 2011.

COMCARE, and Friends University from 2005-2011 (R. at 25-27).
The ALJ reviewed the treatment records and opinions of Dr.
Genilo, who began seeing plaintiff in April 2011.  The ALJ
reviewed the psychological evaluation by Dr. Moeller in November
2011, and the state agency assessment of Dr. Adams, who reviewed
the medical records from 2005-2010 (R. at 622).  Finally, the
ALJ considered the statements and testimony of the plaintiff and
3rd party witnesses.

Other than the opinions of Dr. Genilo, which were
discounted by the ALJ for the reasons set forth above, there is
no evidence that clearly establishes that plaintiff had physical
and/or mental limitations prior to the expiration of her insured
status (March 31, 2009) which would result in a finding of
disability on or before that date.  Given the abundance of both
contemporaneous medical evidence and medical opinion evidence,
the court finds that the ALJ did not err by not obtaining a
medical advisor to assist in determining the onset date.

**VI.  Did substantial evidence support the ALJ's findings
regarding plaintiff's physical limitations?**

In his brief, plaintiff argues that the ALJ erred in his
discussion regarding plaintiff's right arm, the mild x-ray and
examination findings, and the nature, extent, and severity of
plaintiff's seizures.  Therefore, the court will examine the
evidence regarding plaintiff's physical limitations.

Dr. Eyster, plaintiff's treating physician, opined on February 13, 2008 that plaintiff could return to work with a lifting limitation of 20 pounds, with no repetitive lifting over 15 pounds.  Plaintiff was also prohibited from overhead work (R. at 470).  On October 11, 2010, Dr. Siemsen affirmed a physical RFC assessment limiting plaintiff to light work, with some postural limitations and environmental limitations, and no overhead reaching on the right (R. at 530, 604).  This assessment considered plaintiff's seizures, noting that the last grand mal seizure was on November 23, 2009, and that plaintiff had not had seizures since March 16, 2010; another notation in the assessment indicated that plaintiff reported no seizures since Thanksgiving 2009 (R. at 524-525).[3]  The assessment also reviewed the evidence regarding plaintiff's right arm and shoulder (R. at 524-525, 530).  The ALJ gave great weight to the opinions of Dr. Siemsen and Dr. Eyster (R. at 29).  The ALJ included additional limitations due to plaintiff's left shoulder arthritis, and because of plaintiff's seizures (R. at 29).  Plaintiff did not present any medical opinion evidence that plaintiff had additional or more severe physical limitations than those set forth in the ALJ's RFC findings.

The court finds that substantial evidence supports the ALJ's physical RFC findings.  The ALJ reasonably relied on the

---

[3] In fact, Dr. Genilo indicated in his report of April 4, 2011 that plaintiff had been seizure free from major seizures since November 2009 (R. at 696).

medical opinion evidence, including the opinions of Dr. Eyster,
plaintiff's treating physician.  The court finds no clear error
in the ALJ's discussion of plaintiff's physical impairments.
The court will not reweigh the evidence.

**VII.  Are the ALJ's credibility findings supported by**
**substantial evidence?**

Credibility determinations are peculiarly the province of
the finder of fact, and a court will not upset such
determinations when supported by substantial evidence.  However,
findings as to credibility should be closely and affirmatively
linked to substantial evidence and not just a conclusion in the
guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th
Cir. 1995).  Furthermore, the ALJ cannot ignore evidence
favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413,
1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require
a formalistic factor-by-factor recitation of the evidence.  So
long as the ALJ sets forth the specific evidence he relies on in
evaluating the claimant's credibility, the ALJ will be deemed to
have satisfied the requirements set forth in Kepler.  White v.
Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel,
206 F.3d 1368, 1372 (10th Cir. 2000).  Furthermore, the ALJ need
not discuss every relevant factor in evaluating pain testimony.
Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002).  An

ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible.  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court.  White, 287 F.3d at 909-910.

The ALJ discussed plaintiff's credibility and the statements of 3rd party witnesses (R. at 20-21, 27-28).  The ALJ summarized the medical evidence regarding plaintiff's physical impairments (R. at 21-25) and mental impairments (R. at 25-27).  Finally, the ALJ discussed the medical opinions and the relative weight given to those opinions (R. at 29-32).  The medical evidence and the medical opinion evidence given greater weight by the ALJ provided a reasonable basis for finding plaintiff's claims and the 3rd party claims of greater limitations not fully credible.  The court finds that the balance of the ALJ's credibility analysis is supported by substantial evidence.  See Barnum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 31st day of March 2015, Topeka, Kansas.


                              s/Sam A. Crow
                              Sam A. Crow, U.S. District Senior Judge